UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                :

ORIX FINANCIAL SERVICES, INC.,         :
f/k/a "Orix Credit Alliance, Inc.,"           :       01 Civ. 4788 (RJH)(HBP)
                                :

           Plaintiff,           :
                                :       **MEMORANDUM OPINION**
     -against-             :          **AND ORDER**
                                :

THUNDER RIDGE ENERGY, INC., CAREY    :
CLINE, EDDIE CLINE, ILEEN CLINE,       :
LARRY CLINE, LINDA G. CLINE, LINDA L.  :
CLINE, MARK CLINE, and PAMELA CLINE,   :
                                :

          Defendants.       :
                                :
------------------------------------------------------------x

       Defendants Larry Cline and Linda L. Cline[1] have filed a "Motion for Relief from Judgment and for Stay of Collection Proceedings" under Rules 60(b) and 62(b) of the Federal Rules of Civil Procedure, requesting that the Court vacate the judgment entered against them on March 7, 2006 and "stay" the attempts of plaintiff Orix Financial Services, Inc. ("Plaintiff" or "Orix") to enforce this judgment upon Mr. and Mrs. Cline's assets.

**SUMMARY OF THE PROCEEDINGS**

       This action commenced in June 2001, when Plaintiff filed its complaint against the moving defendants, as well as Thunder Ridge Energy, Inc. ("Thunder Ridge"), Carey Cline, Eddie Cline, Ileen Cline, Linda G. Cline, Mark Cline, and Pamela S. Cline, to

---

[1] For the purposes of this opinion, "Mr. Cline," "Mrs. Cline," and "the Clines" refer to movants Larry Cline and Linda L. Cline.

recover the unpaid balance due under notes issued to Plaintiff by Thunder Ridge.[2] Plaintiff alleged that each of the individual defendants had signed a guaranty assuming personal liability for all of Thunder Ridge's debt obligations to Plaintiff (the "Guaranty"). The action was originally assigned to Judge Berman.

Though Mr. and Mrs. Cline retained counsel before bringing the instant motion, all defendants had previously appeared *pro se* throughout this action. On July 24, 2001, Defendants filed a two-page "Special Appearance Motion to Dismiss" in which they moved to dismiss the action, asserting numerous defenses in a conclusory fashion, including "failure of service of process," "improper process," and "lack of jurisdiction of this Court." (Defs.' Mot. to Dismiss, July 24, 2001.) Judge Berman denied this motion without prejudice during a September 25, 2001 conference, which the defendants did not attend, stating that the motion was not in accordance with the court's local rules and was inconsistent with subsequent correspondence from defendants. (Tr. 2:19–3:3, Sept. 25, 2001.) Judge Berman then ordered the defendants to submit their answers by October 15, 2001 and scheduled a conference for October 23, 2001. (*Id.* at 6:16–1.)[3]

Defendants did not file or serve answers by October 15, 2001 and did not attend the conference on October 23, 2001. (Tr. 2:3–20, Oct. 23, 2001; Order, Nov. 19, 2001.) Plaintiff then applied for a default judgment against all defendants, which was entered on November 19, 2001. (Order, Nov. 19, 2001). Magistrate Judge Pitman conducted an inquest regarding damages and issued a Report and Recommendation dated April 2,

---

[2] Familiarity with the underlying facts of this litigation is presumed. A detailed summary of these facts can be found in Magistrate Judge Pitman's December 29, 2005 Report and Recommendation.

[3] Plaintiff has submitted evidence that a transcript of the September 25, 2001 conference was mailed to all defendants on September 27, 2001. (Smoley Aff. ¶ 11, Ex. 6, Feb. 14, 2008; Smoley Aff. ¶ 7, Sept. 23, 2008.)

2003, in which he recommended that the court enter judgment against defendants in the amount of $761,014.72 plus interest.

By order dated July 9, 2003, Judge Berman vacated the default judgment in light of an affidavit submitted by defendant Carey Cline, which the court interpreted as contesting the defendants' liability, and referred the case to Judge Pitman to conduct a hearing and make a recommendation regarding both liability and damages. (Order, July 9, 2003.)

By order dated July 25, 2003, Judge Pitman ordered each defendant to submit "an affidavit setting forth the bases on which he or she intends to defend this action," including the allegations of the complaint that the defendant denied, the factual basis for such denial, any affirmative defenses the defendant wished to assert, and the factual basis for such defenses. (Order, July 25, 2003.) Judge Pitman also specifically reminded the defendants that a *pro se* party was not permitted to represent others and that each defendant must submit his or her own affidavit. (*Id.*) In a later order, Judge Pitman noted that "some defendants" had submitted affidavits in August 2003 outlining the nature of their defenses. (Order, Jan. 28, 2005.)

This action was reassigned from Judge Berman to the undersigned on November 19, 2003.

By order dated December 11, 2003, the Court noted that no defendant had yet filed an answer, ordered defendants to do so by January 15, 2004, and specifically warned that failure to do so would result in entry of default judgment. (Order, Dec. 11, 2003.) In a January 28, 2005 Order, Judge Pitman stated that the defendants had responded to this order by "citing all of their prior submissions to the Court and claiming

3

that those writings constituted their answers." (Order 3, Jan. 28, 2005)  While not explicitly stating that the defendants were deemed to have filed answers, Judge Pitman declined to enter default judgment, noting that *pro se* litigants "are entitled to have their submissions considered leniently." (*Id.*)  Instead, the parties were directed to engage in sixty days of discovery and to submit summary judgment motions by March 30, 2005. (*Id.* at 4.)

On March 30, 2005, Plaintiff filed a motion for summary judgment.  On April 1, 2005, a document titled "Motions of Defendants" was filed, signed by all of the individual defendants except Larry and Linda L. Cline.  (Defs.' Mot., Apr. 1, 2005.)  The Court considered the motion to dismiss and supporting affidavits as the defendants' opposition to Plaintiff's summary judgment motion.  *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, 01 Civ. 4788, 2006 WL 587483, at *1 (S.D.N.Y. Mar. 8, 2006).

An affidavit of Linda L. Cline titled "Affidavit in Support of Motions to Dismiss" and dated April 20, 2005 was served on Plaintiff's counsel and sent to the Court, though it appears never to have been filed on the docket.  *See id.* at *2 & n.2; (Smoley Aff. Ex. 12, Feb. 14, 2008).  In this affidavit, Mrs. Cline states that she never signed any guaranty in favor of Plaintiff.  (Smoley Aff. Ex. 12, Feb. 14, 2008.)  The Court reviewed the affidavit and adopted Judge Pitman's finding that this "conclusory affidavit stating that [Linda L. Cline] did not sign the guaranty bearing her name [was] insufficient as a matter of law to rebut the presumption that her notarized signature is authentic." *Orix v. Thunder Ridge*, 2006 WL 587483, at *2 n.2.  As a result, the Court adopted the recommendation that summary judgment be entered against Linda L. Cline.  *See id.* at *4.

On October 25, 2006, a bench trial was held to determine liability of defendants Linda G. Cline, Ileen Cline, and Pamela Cline, all of whom claimed that they did not sign the guaranties on which their signatures appeared. (*See* Trial Tr. 202, Oct. 25, 2006.) The Court entered a verdict in Plaintiff's favor, finding that the guaranties were enforceable against these defendants because, *inter alia*, these defendants had received copies of the guaranties bearing signatures in their names, were aware that Plaintiff had relied upon these guaranties in providing credit to Thunder Ridge, and had failed to notify Plaintiff of their claim that the signatures had been forged until long after litigation had commenced. (*Id.* 202–06.)

Judgment was entered in the amount of $1,647,254.69 against Linda G. Cline, Ileen Cline, and Pamela Cline on December 18, 2006. (Judgment, Dec. 18, 2006.) Judgment was entered in the amount of $1,729,246.33 against the remaining defendants, including Larry Cline and Linda L. Cline, on April 24, 2007. (Judgment, Apr. 24, 2007.)

## I.      Mr. and Mrs. Cline's Motion for Relief Under Rule 60(b)(4)

The Clines argue that the judgment entered against them is void and must be vacated under Rule 60(b)(4) because they never received valid service of process, and this Court therefore lacked personal jurisdiction over them at all times. They do not dispute that the Guaranties appoint C-A Credit as agent for service of process or that Plaintiff made personal service upon C-A Credit on June 6, 2001. They argue, however, that (1) Linda L. Cline never signed a Guaranty,[4] (2) both Mr. and Mrs. Cline were not properly served in this action because they were never provided with a copy of the

---

[4]  Plaintiff has provided a copy of a Guaranty bearing a notarized signature in the name "Linda L. Cline." (Smoley Aff. Ex. L, Feb. 14, 2008.)

summons and complaint, and (3) service on C-A Credit was improper because C-A Credit is merely an alter ego of Plaintiff.

### A.     Legal Standard – Rule 60(b)(4)

A motion under Rule 60(b)(4) "is unique . . . in that relief is not discretionary and a meritorious defense is not necessary as on motions made pursuant to other 60(b) subsections." *Orix Fin. Servs., Inc. v. Kielbasa*, No. 01 Civ. 1789, 2007 WL 4258207, at *2 (S.D.N.Y. Dec. 3, 2007) (quoting *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998)). Such a motion should be granted if a judgment was entered without personal jurisdiction over the movant. *See, e.g., id.* at *2 ("A judgment obtained in the absence of in personam jurisdiction is void, and a court must vacate such a judgment."). Because "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant," *Fed. Deposit Ins. Corp. v. O'Connor*, No. 94 Civ. 4218 (RWS), 2008 WL 88294, at *1 (S.D.N.Y. Jan. 3, 2008), a judgment entered against a defendant not properly served should be vacated. *Polygram Merch., Inc. v. N.Y. Wholesale Co.*, No. 97 Civ. 6489 (HB), 2000 WL 23287, at *1 (S.D.N.Y. Jan. 13, 2000) ("Proper service provides the hallmark of due process and therefore a judgment obtained by defective service is void and must be vacated.").

### B.     Mrs. Cline's Claim That She Did Not Sign A Guaranty

Mrs. Cline asserts that Plaintiff did not make valid service of process upon her because she did not sign her Guaranty and therefore never agreed to appoint C-A Credit as her agent for service of process.

In its March 8, 2006 opinion adopting Judge Pitman's Report and Recommendation, the Court specifically found that there was no genuine issue of material fact regarding whether Mrs. Cline had signed her Guaranty and granted Plaintiff's motion for summary judgment against her. *Orix v. Thunder Ridge*, 2006 WL 587483, at *2 & n.2, *4, *21. As noted above, an affidavit of Linda L. Cline, dated April 20, 2005 and bearing the heading "Affidavit In Support of Motions to Dismiss" was submitted to the Court. In her affidavit, Mrs. Cline denied signing the guaranty that purportedly bears her signature. The Court treated this affidavit as having been submitted by Mrs. Cline on her own behalf in opposition to Plaintiff's motion for summary judgment and held that the affidavit was insufficient as a matter of law to rebut the presumption that the notarized signature appearing on the Guaranty bearing her name was authentic. *Id.* at *1–2.

Mrs. Cline now contends that she did not file this affidavit with the Court, but rather that she signed the affidavit at the request of "someone still involved with the case," who then submitted it to the Court in connection with the April 1, 2005 motion to dismiss. (Linda L. Cline Aff. ¶ 10, Jan. 14, 2008[5]; Reply Mem. 13–14.) Mrs. Cline contends that she did not file this motion to dismiss and that it was not submitted on her behalf. Rather, she contends it was filed by and on behalf of co-defendants Pamela Cline, Ileen Cline, and Linda G. Cline. (Reply Mem. 13–14.)

Though both Judge Pitman and this Court had given Mr. and Mrs. Cline the benefit of the arguments made by their co-defendants, it appears upon review of the motion papers that they did not join in the April 1, 2005 motion to dismiss. This

---

[5] The affidavits of Larry and Linda L. Cline submitted in connection with Plaintiff's opening brief are not dated. The affidavits were filed on January 14, 2008.

submission consists of two separate motions—one brought by defendants Ileen Cline, Pamela S. Cline and Linda G. Cline and another purportedly brought on behalf of all defendants—and was not signed by Mr. or Mrs. Cline (though it was signed by all other individual defendants).[6] (*See* Defs.' Mot., Apr. 1, 2005.) Of course, if Mr. and Mrs. Cline did not join in their codefendants' submissions, entry of judgment against them was nonetheless proper due to their failure to submit any opposition to Plaintiff's summary judgment motion.

However, Mrs. Cline's challenge to the authenticity of the signature appearing on the Guaranty at issue fails even without reference to the Court's previous holding because she waived this argument by failing to properly raise it at any point in the nearly five years prior to the entry of summary judgment. *See, e.g., Bellis v. Tokio Marine & Fire Ins. Co., Ltd.*, 93 Civ. 6549, 2002 WL 193149, at *15 (S.D.N.Y. Feb. 7, 2002) (stating that objections to sufficiency of service were waived when not raised in motion for summary judgment); *Penn. Lumbermens Mut. Ins. Co. v. Forman's of Orchard St., Inc.*, 96 Civ. 0508, 1998 WL 241963, at *2–3 (S.D.N.Y. May 14, 1998) (finding that defendant waived objections to service of process by waiting until the eve of trial to raise this defense); *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985) ("[T]he defense [of improper service of process] must be made in a reasonably timely manner or it is waived."). Though the "Special Appearance Motion to Dismiss" filed by defendants on July 24, 2001 made reference to the defenses of "failure of service of process" and

---

[6] Magistrate Judge Pitman also considered a number of arguments raised by Carey Cline in various sworn statements submitted to the Court. *See Orix v. Thunder Ridge*, 2006 WL 587483, at *7, *10–17. These documents were apparently never made part of the record but there is no indication that either Mr. or Mrs. Cline joined these submissions.

"improper process," this motion was dismissed without prejudice by Judge Berman in September 2001 and Mrs. Cline never reasserted the motion.[7]

Furthermore, were the Court to reconsider the issue in light of the new material provided by Mrs. Cline—two affidavits by Mrs. Cline and one from Karl Schaffenberger, a "handwriting expert and document examiner"—it would find that, even if the signature on the Guaranty in question is not authentic, Mrs. Cline is estopped from denying her obligations under the Guaranty.

At trial, the Court found that codefendant Linda G. Cline received a copy of the Guaranty executed in her name and that it was Plaintiff's regular practice to send all guarantors a verification letter and a copy of their Guaranty by certified mail. (Trial Tr. 203–04, Oct. 25, 2006.) A more recent affidavit submitted by Jean Redgrave, Vice President of Orix, reaffirms his trial testimony regarding this practice.[8] (*See* Redgrave Aff. ¶ 3, Feb. 8, 2008.) The Court ruled that Plaintiff had established by a preponderance of the evidence that codefendants Linda G. Cline, Ileen Cline, and Pamela Cline received verification letters from Plaintiff. (Trial Tr. 202–04, Oct. 25, 2006.) Notably, in January 1999, at the time Mrs. Cline's verification letter was allegedly sent, she had not yet moved from the Delbarton address listed on the Guaranty executed in her name. (Redgrave Aff. ¶ 3, Feb. 8, 2008; Linda L. Cline Aff. ¶ 7, Jan. 14, 2008.) In light of the considerable evidence to the contrary, the Court would not credit Mrs. Cline's claim that

---

[7] It is no excuse that Mrs. Cline believed that the litigation had ended or was unaware that Plaintiff had filed for summary judgment. As discussed in more detail below, Mrs. Cline's belief that the litigation had ended was not reasonable, Mrs. Cline had actual notice of the litigation, and her failure to receive litigation-related correspondence was entirely due to her failure to provide the court with a current address.

[8] The Clines contend that the affidavit of Jean Redgrave should be disregarded because the assertions therein are not based on personal knowledge. To the contrary, Mr. Redgrave's affidavit clearly states that the contents are "true and correct to the best of [his] own knowledge" unless explicitly identified as having been based "upon information and belief." (Redgrave Aff. ¶ 1, Feb. 8, 2008.) None of the statements upon which the Court relies are identified as statements based on information and belief.

she never received any correspondence from Plaintiff regarding the Guaranty (Linda L. Cline Aff. ¶ 4, Jan. 14, 2008; Linda L. Cline Aff. ¶ 3, Mar. 11, 2008), and would find that Mrs. Cline received a verification letter and a copy of her Guaranty in January 1999. Therefore, like her codefendants, Mrs. Cline would be estopped from challenging the authenticity of the signature on the Guaranty because though she was long aware that a Guaranty executed in her name was provided to and relied upon by Plaintiff, she never informed Plaintiff that she believed the signature on the Guaranty was not hers. (*See* Trial Tr. 201–06, Oct. 25, 2006.)

### C.      Mr. and Mrs. Cline's Claim That They Did Not Receive Valid Service

Mr. and Mrs. Cline both contend that the judgment against them must be vacated due to improper service. Specifically, they contend that even if Plaintiff served the summons and complaint on C-A Credit as the Clines' agent for service of process, such service did not meet the requirements of due process because they were never sent a copy of the summons and complaint.

Under Rule 4(e) of the Federal Rules of Civil Procedure, a plaintiff may serve a defendant by "delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). An agent appointed to receive service of process need not be personally known to the defendant and need not expressly promise to provide the defendant notice of service. *See Nat'l Equip. Rental v. Szukhent*, 375 U.S. 311, 312–17 (1963). However, due process is satisfied when the summons and complaint or notice thereof is "promptly transmit[ted]

. . . to the principal." *Orix v. Kielbasa*, 2007 WL 4258207, at *3 (quoting *Orix Fin. Servs. v. Baker*, 768 N.Y.S.2d 780, 782 (N.Y. Sup. Ct. 2003)).

"There is 'no rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions.'" *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)). However, notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Cheyenne Autumn, Inc. v. Mine & Bill's*, No. 94 Civ. 4011, 1995 WL 366388, at *4 (S.D.N.Y. June 19, 1995) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 315 (1950)). "If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended." *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d at 254; *see also Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("The standards . . . for service on individuals and corporations are to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (citations omitted)).

When a defendant with actual notice of litigation seeks to vacate a default judgment entered against it based on improper service of process, the defaulting defendant has the burden of proving that service did not occur. *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). Mr. and Mrs. Cline concede that they received actual notice of this lawsuit from codefendant Carey Cline in June or July 2001. (Larry Cline Aff. ¶ 10, Jan. 14, 2008; Linda L. Cline Aff. ¶ 8, Jan. 14, 2008.)

While the instant motion seeks to vacate a summary judgment, not a default judgment, the same allocation of the burden applies, since the entry of judgment resulted

from the Clines' failure to participate in the litigation and their default with respect to Plaintiff's motion for summary judgment. Indeed, Mr. and Mrs. Cline now assert that they never answered or otherwise appeared in this action. (Reply Mem. 11–14.) Placing the burden on the moving defendants is also appropriate in this case because Plaintiff is potentially prejudiced by the defendants' delay in raising this issue. *See Burda Media, Inc.*, 417 F.3d at 299 (citing the "fear of prejudice against a plaintiff who, owing to delay, might in subsequent collateral proceedings no longer have evidence of personal jurisdiction that existed at the time of the underlying suit," as one rationale for this assignment of the burden (internal quotation marks omitted)).

Plaintiff disputes Mr. and Mrs. Cline's claim that they did not receive a copy of the summons and complaint. The affidavit of Plaintiff's attorney Lewis Smoley[9] states that, on June 6, 2001, C-A Credit sent copies of the summons and complaint to Larry Cline and Linda L. Cline at the Delbarton, West Virginia address ("the Delbarton address") listed in Mr. and Mrs. Cline's Guaranties. (Smoley Aff. ¶ 7, Feb. 14, 2008; Smoley Aff. ¶ 5, Sept. 23, 2008.) The cover letter accompanying the summons and complaint informed the addressee that C-A Credit had accepted service of process on his

---

[9] The Clines contend that Mr. Smoley's affidavit should be disregarded because it is unclear which of the statements therein are based on personal knowledge. The affidavit states that "[t]he factual allegations contained herein are based upon my personal knowledge or, if stated upon information and belief, upon information furnished to me by the plaintiff." (Smoley Aff. ¶ 1, Feb. 14, 2008.) In a September 12, 2008 Order, the Court directed Plaintiff to file supplemental affidavits clarifying the source of Mr. Smoley's knowledge regarding the statements made in the affidavit. The Court also granted Plaintiff leave to file affidavits from individuals with personal knowledge regarding correspondence allegedly sent by Orix and C-A Credit to Mr. and Mrs. Cline. (Order, Sept. 12, 2008.) Plaintiff submitted supplemental affidavits from Mr. Smoley, Mr. Redgrave, and James P. Ward, a former officer of C-A Credit. (Smoley Aff., Sept. 23, 2008; Redgrave Aff., Sept. 22, 2008; Ward Aff., Sept. 22, 2008.) The Court is satisfied that Mr. Smoley's statements regarding the correspondence allegedly sent from Orix and C-A Credit to the Clines are based on personal knowledge, specifically Mr. Smoley's personal involvement in the preparation and mailing of this correspondence. (*See* Smoley Aff. ¶¶ 5, 7, Sept. 23, 2008; Degrave Aff. ¶ 4, Sept. 22, 2008; Ward Aff. ¶¶ 2–4, Sept. 22, 2008.) The Court also finds that the statements in Mr. Ward's affidavit regarding the regular practices of Mr. Ward and C-A Credit, while Mr. Ward was an officer of C-A Credit, are based on personal knowledge. (*See* Ward Aff. ¶¶ 1–4, Sept. 22, 2008.)

or her behalf and advised that "prompt attention to this matter is suggested." (Smoley Aff. ¶ 7, Ex. 3, Feb. 14, 2008.) Mr. Smoley further states that Orix sent similar mailings to the Clines at the Delbarton address by both first-class and certified mail on the same day, and attaches copies of signed certified mail return receipts received by his office indicating that these documents were received by the Clines on June 20, 2001. (*Id.* ¶ 8, Ex. 4; Smoley Aff. ¶ 5, Sept. 23, 2008.) There is no indication in the relevant files and records that any of the notice letters sent by C-A Credit or Orix was returned as undeliverable. (Redgrave Aff. ¶ 3, Sept. 22, 2008; Smoley Aff. ¶ 5, Sept. 23, 2008; Ward Aff. ¶ 4, Sept. 22, 2008.)

Mr. Smoley also states that he subsequently sent numerous litigation-related mailings to Mr. and Mrs. Cline at the Delbarton address, including notifications regarding pre-trial and pre-motion conferences, a transcript of the September 25, 2001 conference, a copy of the November 19, 2001 order entering default judgment, and copies of correspondence from Plaintiff to the court. (Smoley Aff. ¶¶ 11–12, Ex. 6, Feb. 14, 2008; Smoley Aff. ¶ 7, Sept. 23, 2008.) Mr. Smoley also attaches copies of numerous signed return receipts received by his office indicating the Clines' receipt of these mailings between June 2001 and February 2002.[10] (Smoley Aff. ¶¶ 11–12, Ex. 6, Feb. 14, 2008; Smoley Aff. ¶ 7, Sept. 23, 2008.)

Plaintiff's counsel admits that, eventually, correspondence sent to the Delbarton address was returned to sender as undeliverable, but contends that this did not occur until around August 2002. (Smoley Aff. ¶ 13, Feb. 14, 2008.) At this time, Plaintiff's counsel

---

[10] Plaintiff's counsel states that, around February 2002, he began sending litigation correspondence to the Clines via first class mail rather than certified mail. (Smoley Aff. ¶ 12, Feb. 14, 2008.)

claims that he asked other defendants for Mr. and Mrs. Cline's new address but that he received no response. (*Id.*)

Larry and Linda L. Cline argue that they did not receive a copy of the summons and complaint or any other correspondence from C-A Credit (Linda L. Cline Aff. ¶¶ 2, 6, Jan. 14, 2008; Larry Cline Aff. ¶ 9, Jan. 14, 2008; Larry Cline Aff. ¶ 3, Mar. 11, 2008), and that they would not have received any mail sent to the Delbarton address because they moved from this address to Williamson, West Virginia in November 1999 and moved again to Morehead City, North Carolina in June 2001 (Linda L. Cline Aff. ¶ 7, Jan. 14, 2008; Larry Cline Aff. ¶ 9, Jan. 14, 2008). However, as noted, Plaintiff has provided signed certified mail return receipts indicating that Larry and Linda L. Cline signed for and received mail sent to the Delbarton address, including a receipt dated June 20, 2001, indicating delivery of Plaintiff's June 6, 2001 letters attaching the summons and complaint and notifying the Clines of service, and numerous receipts dated between June 2001 and February 2002 indicating delivery of other mailings from Plaintiff's counsel. In response, Larry Cline maintains that he has no recollection of having received or seen any of the documents allegedly sent by Plaintiff and Plaintiff's counsel, that he has no recollection of having signed the certified mail receipts that appear to bear his signature, and that he "cannot authenticate those [receipts] as bearing [his] signature." (Larry Cline Aff. ¶¶ 2, 3, Mar. 11, 2008.) Linda L. Cline denies receiving any correspondence from Plaintiff at any time. (Linda L. Cline Aff. ¶ 4, Mar. 11, 2008.)

The Court finds that Mr. and Mrs. Cline have not met their burden of proving that they were not properly served in this action. It is not disputed that Plaintiff made personal service of the summons and complaint on an officer of C-A Credit on June 6,

2001. (Smoley Aff. ¶ 6, Feb. 14, 2008.) The Court finds that both C-A Credit and Orix promptly sent notice of service and a copy of the summons and complaint to the Clines at the Delbarton address that they had listed in their Guaranties. This method of providing notice was "'reasonably calculated, under all the circumstances, to apprise [the Clines] of the pendency of the action.'" *Cheyenne Autumn*, 1995 WL 366388, at *4 (quoting *Mullane*, 339 U.S. at 314, 315).[11] Furthermore, though Mr. and Mrs. Cline no longer lived at this address in June 2001, when service was made, it can be inferred from the numerous certified mail return receipts bearing their signatures—regarding which the Clines offer no explanation—that they continued to receive mail sent to this address until at least February 2002. Mr. and Mrs. Cline's receipt of the summons and complaint is also indicated by the fact that both defendants joined the motion to dismiss dated July 20, 2001, which purports to raise numerous grounds for dismissal of the complaint, includes references to specific deficiencies in the allegations of the complaint, includes references to specific paragraphs of the complaint, and objects to the fact that the complaint was "*mailed* rather than being served." (Defs.' Mot. to Dismiss, July 20, 2001.)[12]

---

[11] The cases cited by Mr. and Mrs. Cline addressing Orix's service practices are distinguishable. In *Orix Financial Services Inc. v. Baker*, the court found that mere service of papers on C-A Credit, "with no claim that C-A Credit Corp. sent the materials to defendants or was under any duty to do so," did not satisfy the requirements of due process. 768 N.Y.S. 2d 780, 783 (N.Y. Sup. Ct. 2003). Here, as noted, both C-A Credit and Orix sent notice of service and a copy of the summons and complaint to the Clines. *See Orix v. Kielbasa*, 2007 WL 4258207, at *3 (distinguishing *Baker* on these same grounds). In *Orix Financial Services, Inc. v. 1st Choice Freight Systems, Inc.*, C-A Credit did not mail notice to the address listed in the guaranty, but to a "seemingly incorrect address which had been provided by Orix." No. 03 Civ. 9296 (RMB), 2006 WL 2168332, at *4 (S.D.N.Y. July 31, 2006). Here, both C-A Credit and Orix sent notice and service papers to Mr. and Mrs. Cline at the address each had provided in his or her Guaranty.

[12] While mailing notice of service to an address where a defendant no longer resides might not always constitute adequate notice, especially when, as here, the defendant has not been provided with contact information with which to report a change of address to its agent, due process was not violated in the instant case because Mr. and Mrs. Cline had actual notice of the litigation and did in fact receive the notice that was mailed to their former address.

**D.  Mr. and Mrs. Cline's Claim That Service On C-A Credit Was Not Effective Because C-A Credit Is an Alter Ego of Orix**

Mr. and Mrs. Cline argue for the first time in their reply brief that service on C-A Credit was not "reasonably calculated to apprise the Clines of the pendency of the action" because C-A Credit is allegedly not an independent entity, but merely the alter ego of Plaintiff.  (Reply Mem. 7–9.)  As evidence of an alter ego relationship, Mr. and Mrs. Cline allege that Carol Nicholas, who has accepted service as an "officer" of C-A Credit in numerous litigations initiated by Plaintiff in recent years, is identified on Plaintiff's website as having been employed by Plaintiff over the same period and that C-A Credit and Plaintiff have used common addresses.  (Capozzola Aff. ¶¶ 5–9, 11, Mar. 11, 2008.)

Mr. and Mrs. Cline have cited no case law, nor is the Court aware of any, that suggests that a contracting party may not agree to designate the "alter ego" of another party as its agent for service of process, as long as such service and subsequent notice otherwise complies with due process.  In any case, the proffered evidence does not demonstrate that C-A Credit is an alter ego of Plaintiff, though the two companies may be affiliated.  *See, e.g., Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990) ("New York courts disregard corporate form reluctantly, . . . only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own . . . ." (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979))).  The Supreme Court has rejected the argument that a plaintiff's affiliate may not serve as a defendant's agent for service of process.  *Szukhent*, 375 U.S. at 316–18; *see also Orix Credit Alliance, Inc. v. Hamrick*, No. 90 Civ. 7012, 1991 WL 41577, at *4 (S.D.N.Y. Mar. 18, 1991)

(rejecting defendant's argument that C-A Credit Corp. was not a proper agent for receipt of process because it was an affiliate of Orix, citing *Szukhent*).[13]  The Clines' reliance on Rule 4(c)(2), which states that service must be made by a person who is "not a party," is misplaced; this provision limits the persons who may effect service, but does not purport to limit the entities that may be designated as agents for service of process.  Fed. R. Civ. P. 4(c)(2).

## II.     Mr. and Mrs. Cline's Motion for Relief Under Rule 60(b)(1)

Mr. and Mrs. Cline also move the Court to vacate the judgment pursuant to Rule 60(b)(1), which provides that a "court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect."  The Clines characterize their failure to oppose Plaintiff's summary judgment motion as "mistake, inadvertence, surprise, or excusable neglect," because they mistakenly believed (1) that they did not need to participate in the action because codefendant Carey Cline's involvement was sufficient and (2) that the case against them had ended when Judge Berman vacated default judgment in June 2003.

### A.     Legal Standard – Rule 60(b)(1)

"Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  As such, "it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened."  *Id.* (citations and internal quotation marks omitted).  "Motions

---

[13]  Contrary to the Clines' suggestion (Reply Mem. 9), they had ample opportunity while this case was still pending to pursue discovery regarding the relationship between these entities.

under Rule 60(b) are addressed to the sound discretion of the district court," *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), and relief is permitted "only upon a showing of exceptional circumstances." *Nemaizer*, 793 F.2d at 61.

"In the default judgment context, courts generally examine three criteria to determine whether to vacate a judgment [under Rule 60(b)(1)]: (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (internal quotation marks omitted). For the reasons discussed above, the Court will apply this standard, even though the Clines seek to vacate a summary judgment rather than a default judgment.

### B. Willfulness

Regarding willfulness, a "careless or negligent" error is not considered willful, though the "degree of negligence in precipitating a default is a relevant factor to be considered," and "gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief." *Id.* at 61.

According to Mrs. Cline, she and her husband "reasonably relied on the representations of . . . codefendants, who led [them] to believe that the matter had been resolved." (Linda L. Cline Aff. ¶ 2, Jan. 14, 2008.) The representation to which she refers is apparently that of Carey Cline, who informed Mr. and Mrs. Cline in 2003 that Judge Berman had vacated the default judgment entered in November 2001. (Larry Cline Aff. ¶ 11, Jan. 14, 2008; Linda L. Cline Aff. ¶¶ 9, 10, Jan. 14, 2008.) Mr. and Mrs. Cline

contend that they "affirmatively believed" on the basis of this information that the case was over, at least to the extent their interests were involved. (Larry Cline Aff. ¶ 11, Jan. 14, 2008; Linda L. Cline Aff. ¶¶ 9, 10, Jan. 14, 2008.) The Clines also contend that their failure to take part in this litigation or to oppose summary judgment was excusable because they did not receive notice of activity in the case. (Clines' Mem. 13.) For example, Mr. Cline claims that he was unaware and received no notice that Plaintiff had moved for summary judgment in 2005. (Larry Cline Aff. ¶ 11, Jan. 14, 2008.)

The Clines offer no plausible basis for their alleged belief that this litigation had ended based on their understanding that default judgment had been vacated. Such a belief was wholly unreasonable, especially in light of the Clines' admission that they did not understand what a default judgment was. (Larry Cline Aff. ¶ 11, Jan. 14, 2008; Linda L. Cline Aff. ¶ 9, Jan. 14, 2008.) Furthermore, Carey Cline and the other codefendants obviously knew that the litigation had not been resolved, as they continued to participate and filed papers in opposition to Plaintiff's motion for summary judgment. Notably, in their opposition papers, the codefendants specifically asked the Court to find that Mrs. Cline did not sign the Guaranty executed in her name even though she "was not able to participate with the [handwriting] expert," indicating the codefendants' awareness that Plaintiff's claims against Mrs. Cline had not been resolved. (Defs.' Mot. to Dismiss 2, Apr. 1, 2005.) The Clines' actions are not justified by their lack of legal training. *See, e.g., Williams v. New York City Dept. of Corrections*, 219 F.R.D. 78, 85 (S.D.N.Y. 2003) (stating that a litigant's *pro se* status is not a basis for relief under Rule 60(b)); *Am. Arbitration Ass'n, Inc. v. Defonseca*, No. 93 Civ. 2424(CSH), 1997 WL 102495, at *2

(S.D.N.Y. Mar. 6, 1997) ("[A] lack of legal sophistication cannot form the basis of a claim of excusable neglect.").

Mr. and Mrs. Cline's belief that their interests would be protected by Carey Cline is likewise without basis and unreasonable. The Clines knew that Carey Cline was not an attorney. Furthermore, Judge Pitman specifically cautioned the defendants that a non-attorney cannot represent other parties. (Order, July 25, 2003.)

With respect to the Clines' alleged failure to receive notice of Plaintiff's motion for summary judgment and other litigation activity, this is due entirely to their failure to provide Plaintiff and the Court with a current address. It is a responsibility of all litigants, including *pro se* litigants, to inform the court and opposing parties of a change in address. *See, e.g., Gillespie v. AST Sportswear, Inc.*, No. 97 Civ.1911(PKL), 1999 WL 1080173, at *1 (S.D.N.Y. Dec. 1, 1999) ("Each party has an obligation to leave a forwarding address or otherwise stay in contact with the Court to ensure that he receives and responds to any Court order."); *Am. Arbitration Ass'n, Inc.*, 1997 WL 102495, at *2 ("[A] litigant's obligation to promptly inform the Court and the opposing party of an address change is a matter of common sense, not legal sophistication."). Plaintiff had actual notice of the litigation and apparently received litigation-related correspondence until at least February 2002.

Under these circumstances, Mr. and Mrs. Cline's inaction constituted, at the least, gross negligence. *See Am. Arbitration Ass'n, Inc.*, 1997 WL 102495, at *1–2 (finding *pro se* defendant's failure to provide the court or the plaintiff with a current address to be, "at best," gross negligence weighing against a finding of excusable neglect).

## C.    Meritorious Defenses

"In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."  *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005).  "Mere conclusory statements" are insufficient.  *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986).  "[T]he absence of . . . a [meritorious] defense is sufficient to support [a] district court's denial of a Rule 60(b) motion."  *New York v. Green*, 420 F.3d at 109 (internal quotation marks omitted).

The Clines assert a number of allegedly meritorious defenses.[14]  However, the only defense on which the required showing has been made is the allegation that Mrs. Cline did not execute her Guaranty.  Mrs. Cline asserts in her affidavit that she did not sign a Guaranty and that she did not know about the existence of the Guaranty until this lawsuit began.  (Linda L. Cline Aff. ¶¶ 2, 4, 5, Jan. 14, 2008.)  These facts, if proven at trial, would constitute a complete defense.  However, as discussed above, Mrs. Cline has waived this defense and, in light of other evidence, would likely be unsuccessful in proving these facts at trial.

---

[14]  Specifically, Mr. and Mrs. Cline assert that (1) the contracts in question are unconscionable; (2) the Guaranties were obtained under duress; (3) Plaintiff obtained double recovery by purchasing the mining equipment at the foreclosure auction and reselling it at a profit; (4) Linda L. Cline never signed her guaranty; (5) Linda L. Cline's Guaranty violated 12 C.F.R. § 202.7(d)(1), which provides that "a creditor shall not require the signature of an applicant's spouse . . . on any credit instrument" if the applicant is creditworthy for the amount and terms requested; (6) the Guaranties do not identify the specific contracts to which they apply; and (7) the judgment improperly includes an amount loaned for the purchase of a "Fairchild Scoop," which loan was made long after the Guaranties were signed.  (*See* Clines' Mem. 10–11; Reply Mem. 16–18.)

### D.     Prejudice to Plaintiff

In determining the degree to which Plaintiff would be prejudiced by vacatur of the judgment, "[t]he burden is on [the Clines] . . . to present evidence showing that [Plaintiff] would not suffer significant prejudice." *Knox v. The Palestine Liberation Org.*, 248 F.R.D. 420, 429 (S.D.N.Y. 2008).

Mr. and Mrs. Cline assert that "the danger of prejudice to Plaintiff is minimal," but present no evidence to support this statement. Instead, the Clines merely restate various of their allegedly meritorious defenses to this action—that Plaintiff did not provide adequate notice, that damages should be reduced by the resale value of the equipment Plaintiff purchased at the "questionable" foreclosure auction, that the Guaranties were unconscionable, and that Mrs. Cline did not sign a Guaranty. The Clines have not met their burden to show that Plaintiff will not be prejudiced if relief is granted.[15] *See New York v. Green*, 420 F.3d at 110 ("Defendants offered no evidence suggesting that the State would not suffer prejudice, apart from pointing out the State's delay in moving for default judgment. Thus, on the record of this case, it was not clear error for the District Court to conclude that vacating the default judgment would prejudice the State in ways beyond mere delay.").

Upon consideration of the relevant factors, the Court finds (1) that Mr. and Mrs. Cline's gross negligence in failing to participate in this action weighs against relief; (2) that the only potentially meritorious defense on which the Clines have presented evidence has been waived; and (3) that the Clines have not met their burden to show that Plaintiff

---

[15] Plaintiff asserts that it will suffer prejudice if the instant motion is granted because the Clines may dispose of their assets, reducing Plaintiff's potential recovery, and because William G. Bagby, "one of [Plaintiff's] principal witnesses," who testified at the trial of the codefendants in this action, is no longer employed by Plaintiff and may be unavailable or unwilling to testify at trial. (Opp'n Mem. 24–25.)

would not be prejudiced by vacatur.  Because none of these factors support vacatur, the Clines' Rule 60(b)(1) motion is denied.

**II.**     **Mr. and Mrs. Cline's Motion for Relief Under Rule 60(b)(6)**

Finally, Mr. and Mrs. Cline argue that relief should be granted under Rule 60(b)(6) because (1) the interest rates on the underlying loans to Thunder Ridge were excessive, (2) Mr. Cline is in poor health with vision and hearing problems, (3) the Clines cannot afford to pay this judgment, and (4) Mrs. Cline did not sign her guaranty.  (Clines' Mem. 14.)

Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule."  *Nemaizer*, 793 F.2d at 63 (2d Cir. 1986).  The "extraordinary circumstances" required for relief under Rule 60(b)(6) must also suggest that the moving party "is faultless in the delay."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).

None of the Clines' arguments constitute "extraordinary circumstances" necessary to grant relief.  Furthermore, as discussed above, Mr. and Mrs. Cline were not "faultless" in their delay—the delay was the result of their failure to provide the Court with a current mailing address and their unreasonable belief that they did not need to participate in the litigation.  Therefore, relief under Rule 60(b)(6) is not warranted.

## CONCLUSION

For the reasons stated herein, the Clines' motion **[51]** is DENIED.

SO ORDERED.

Dated: New York, New York
September 30, 2008

Richard J. Holwell
United States District Judge